Harry P. **LOCKLIN** and Elmer J. **Brant,** general partners doing business under the firm name of **Radiant Color Company, Plaintiffs,** ·

v.

**SWITZER BROTHERS, INC., a corporation, Defendant.**

No. 36995.

United States District Court
N. D. California, S. D.

Feb. 17, 1966.

See, also, D.C., 235 F.Supp. 904.

Carl Hoppe and Ernest M. Anderson, Hoppe, Mitchell, Murtha & Anderson, San Francisco, Cal., for plaintiffs.

Benjamin H. Sherman, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., and Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for defendant.

MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This case is before the Court on a petition filed by defendant Switzer Brothers, Inc., (hereinafter referred to as Switzer) on May 8, 1963, for an order adjudicating plaintiffs, doing business

as Radiant Color Company (hereinafter referred to as Radiant), in civil contempt for violation of the judgment of this Court, entered on November 17, 1959.

That judgment held that claims 1, 2, 3, 4 and 9 of Switzer's Kazenas patent were valid and were infringed by certain fluorescent pigments manufactured by Radiant. On appeal, the judgment was affirmed, Locklin v. Switzer Bros., Inc., 299 F.2d 160 (9th Cir. 1961).

On May 2, 1962, an injunction was entered permanently enjoining Radiant from making, using, selling or offering for sale, except under license from Switzer any fluorescent pigment embodying or manufactured by the use of the inventions disclosed in the above claims of the Kazensas patent.

On March 31, 1964, this Court found Radiant guilty of civil contempt for violation of the injunction. Upon appeal, the Court in Locklin v. Switzer Bros., Inc., 348 F.2d 244 (9th Cir. 1965) remanded the case for a determination of the specific question whether, in Radiant's accused 4–C resin, the amount of melamine utilized is such as to bring the resin within the limits of the claims of Switzer's Kazenas patent, No. 2,809,954, as those claims were delineated in the Court's prior opinion in 1961.

Pursuant to the remand, this Court held an evidentiary hearing on the above question from October 11, 1965, to October 15, 1965.

Radiant contends that its accused formula 4–C resin does not fall within the following functional language of claim 2 of the Kazenas patent:

"[T]he amount of said melamine compound being an amount * * * sufficient to render said condensation product substantially insoluble in aromatic hydrocarbon solvents. * * * "

Specifically, Radiant contends that, notwithstanding the fact that the amount of urea used by them in the 4–C resin is relatively small, the urea is used in place of melamine, and reduces the amount of melamine to a point where the melamine alone is not "sufficient to render said condensation product substantially insoluble in aromatic hydrocarbon solvents."

The 1965 Court of Appeals decision held that, if Radiant's contention is factually correct, there would be no infringement, stating with regard to the above language of claim 2 of the Kazenas patent:

"In our earlier opinion we ruled that the use of this functional language in specifying the amount of melamine required * * * did not invalidate the claims, but by the same token it served to fix precisely the limits of the claims." Locklin v. Switzer Bros., Inc., supra at 246.

In its earlier opinion the Court had found that the language was not vague, stating:

"There is testimony to the effect that 'sufficient melamine to render the resin substantially insoluble' is a simple, clear test for an ordinary chemist to perform and one which does not require extensive experimentation in order that the precise critical limits be ascertained in a particular case. Under such circumstances, the fact that some preliminary testing is required does not render the claim invalid for vagueness." Locklin v. Switzer Bros., Inc., supra at 166.

The Court had also pointed out the reason why the lower limit of the amount of melamine, which would render the resin substantially insoluble, could not be stated in precise quantitative terms, stating:

"Switzer points to the fact that of the considerable number of melamine compounds encompassed by the patent, each has a different critical limit. It asserts that this renders it wholly unreasonable to expect the claims to be specific in this respect or to expect any further specificity than that which appears in the examples given." Locklin v.

584

Switzer Bros., Inc., supra at 165–166.

Defendant Switzer, therefore, has the burden of showing the following in order to establish that Radiant is in civil contempt of this Court's injunction.

1. A simple clear, reliable test for an ordinary chemist to perform and one which does not require extensive experimentation to show whether the accused resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

2. That in fact the accused resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

In order to sustain this burden, Switzer relies on two different kinds of tests: (1) the quick *qualitative* test, which was the test used at the original infringement trial and (2) the *quantitative* test.

QUALITATIVE TESTS

In the qualitative tests, Switzer manufactured and used a resin consisting of a co-condensation reaction of melamine, sulfonamide and formaldehyde in the same mole proportions as in the accused 4–C resin (i. e., 7 moles of formaldehyde, 4 moles of sulfonamide and 1 mole of melamine). Switzer eliminated entirely the one-half mole of urea from the test resin in order to show that there was sufficient melamine, without the urea, to render the resin substantially insoluble in aromatic hydrocarbon solvents.

Switzer conducted two qualitative tests. The first test was conducted on September 25, 1965, at Cleveland, Ohio, in the presence of Radiant. On that date, Switzer placed a measured quantity of its test resin in separate containers each holding one of the three aromatic hydrocarbon solvents—benzene, toluene and xylene.

The second test was conducted at trial, at which time Switzer placed a roughly measured quantity of its test resin in containers holding each of the aforesaid hydrocarbon solvents.

Both parties are in agreement that, if a finely ground resin is placed in an aromatic hydrocarbon solvent and it stays suspended without coalescence or agglomeration, then this is an indication that the resin is insoluble, while if the resin becomes coalesced or agglomerated, then this is an indication that the resin is not insoluble. There is dispute, however, over how long the resin must remain suspended without coalescence or agglomeration to come within the defining words of the patent claim: "substantially insoluble in aromatic hydrocarbon solvents."

At the original trial in 1959 before Judge Goodman, the Court considered only tests in pure toluene in determining whether the resin was substantially insoluble in an aromatic hydrocarbon solvent. Furthermore, at the original trial, the lapse of time between the date when the resin was placed in toluene and the date when the observations of the condition of the resin in the toluene were made, was less than one week.

Switzer demonstrated during this contempt hearing that its test resin remained free flowing and dispersed 24 hours after being placed in the pure solvents. Switzer also demonstrated at the trial that the resin placed in the solvents on September 25, 1965, which had stood unshaken for 17 days, was free-flowing upon being shaken at the trial.

Radiant also made a number of test resins and conducted tests thereon in the pure solvents. One resin made by Radiant, designated JS–739, contained the following ingredients in the indicated mole proportions: 7 moles of formaldehyde, 4 moles of sulfonamide, 1 mole of melamine and one-half mole of urea. Another resin manufactured by Radiant, designated JS–738, contained the same ingredients except the urea.

At the trial, Bennahmias, Technical Director of Radiant, testified (RT 404 et seq.) that on July 13, 1963, more than two years prior to trial, he placed a JS–738 resin in a container of benzene (Radiant's Exhibit No. 43) and that on July 28, 1963, he placed a JS–738 resin

in a container of toluene (Radiant's Exhibit No. 44). Mr. Bennahmias then testified about the results of these 1963 tests. However, because these tests were not conducted under the observation of Switzer, as were later tests conducted by Radiant on September 3, 1965, and in light of the conflict in results between these tests and those conducted on September 3, 1965, the Court considers the latter tests more reliable.

In the inter-partes test in Richmond, California, held on September 3, 1965, Bennahmias testified that he placed a measured quantity of the JS–738 resin in containers of benzene (Radiant's Exhibit No. 17), toluene (Radiant's Exhibit No. 18) and xylene (Radiant's Exhibit No. 19).

The JS–738 resin, which was placed in benzene on September 3, 1965 (Radiant's Exhibit No. 17) was introduced in evidence by Radiant and appeared to be agglomerated at the time of trial. But the JS–738 resin, which was placed in the toluene on September 3, 1965, (Radiant's Exhibit No. 18) was free-flowing—notwithstanding Mr. Bennahmias' statement that he thought it was partly agglomerated (RT 418). Further, the JS–738 resin, which was placed in xylene on September 3, 1965, (Radiant's Exhibit No. 19) was also free-flowing at the time of trial.

Radiant relies greatly upon the test which showed that on the date of trial, the JS–738 resin, which had been placed in *benzene* on September 3, 1965, appeared to be agglomerated.

However, all resins of this type will eventually agglomerate in any pure aromatic hydrocarbon solvent. The stronger the solvent the less time it will take to agglomerate. According to the testimony of Dr. Von Fischer, and certain publications introduced at trial (RT 220–225), benzene has a very high solvent power, is the most volatile of the aromatic hydrocarbon solvents, is quite toxic and is not generally employed as a solvent in paint vehicles of the type herein used. Since benzene is the strongest of the three aromatic hydrocarbon solvents, a resin should agglomerate in it first.

Further, the testing of a resin in any pure aromatic hydrocarbon solvent is merely an indication of the substantial insolubility of the resin in a paint vehicle.

The mere fact that resin agglomerates within four or more weeks in a pure hydrocarbon solvent, such as benzene, does not necessarily indicate that the resin will agglomerate in a paint vehicle in the same period of time. Pure hydrocarbon solvents are never used alone with resin in a paint vehicle, but only in conjunction with other liquids and substances which in effect reduce the strength of the pure solvent.

Thus, in a paint vehicle the resin will actually remain insoluble for a considerably longer period of time than in a pure solvent.

As demonstrated at trial by Switzer, resins made up in accordance with the examples in the Kazenas patent have remained free-flowing and dispersable in the paint vehicles for longer than five years (RT 102–113).

Mr. Bennahmias, testifying for Radiant, admitted at trial that tests of 48 hours and one week are indications that the pigment can be used satisfactorily in paint vehicles (RT 483)—although Radiant used other tests as well (RT 491).

The Court finds, therefore, that the benzene test conducted by Radiant, showing its JS–738 resin to have agglomerated in benzene after approximately seven weeks, does not disprove that the accused resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

The Court finds no merit in Radiant's contention that the results are not reliable because of certain differences between the kind of melamine Switzer used in its qualitative tests and that used by Radiant, and because of certain differences in the method of preparation of the test resin by Switzer.

It is, therefore, the finding of the Court that, when taken together, the 24 hour and 17 day qualitative tests conducted by Switzer, and the qualitative tests conducted by Radiant which showed that their JS–738 resin was free flowing and dispersed in toluene and xylene after approximately seven weeks, are simple clear reliable tests, which demonstrate that, in fact, the accused 4–C resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

The Court, however, in no wise suggests that the above tests represent the minimum standard for determining the question presented or that the 24 hour qualitative test, alone, would not suffice for determining the question here. The Court merely holds that the above tests when considered together do in fact show beyond any doubt that the accused 4–C resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

In addition to the above qualitative tests made by Switzer, Switzer also made a 24 hour quantitative test. In this test a carefully measured portion (.10 grams) of the JS–738 resin (which was a sample resin made by Radiant but without any urea) was deposited in 50 milliliters of each of the three pure solvents. In addition, a carefully measured portion of the JS–739 resin (also a sample made by Radiant but containing a half-mole of urea) was deposited in 50 milliliters of each of the three pure solvents.

After allowing all of these solutions to stand for 24 hours, Switzer determined how much of the resin had gone into solution, i. e., the solubility. Switzer determined that in benzene, .020 grams of the JS–738 resin had dissolved per 100 milliliters of benzene, while .010 grams of the JS–739 resin had dissolved per 100 milliliters of benzene. In toluene, Switzer determined that .007 grams of the JS–738 resin had dissolved per 100 milliliters of toluene, while .002 grams of the JS–739 resin had dissolved per 100 milliliters of toluene. In xylene, Switzer determined that .003 grams of the JS–738 resin had dissolved per 100 milliliters of xylene, while .002 grams of the JS–739 resin had dissolved per 100 milliliters of xylene.

It appears, therefore, that in the 24 hour period only very minute quantities of the JS–738 resin and of the JS–739 resin went into solution.

Although these quantitative tests were not before the Court in the original infringement trial in 1959, the Court finds that the results of the quantitative tests with the JS–738 resin substantiate the findings of this Court with regard to the qualitative tests, to wit: that the accused 4–C resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

Radiant's basic contention has been that the amount of melamine alone in the condensation product of formaldehyde, sulfonamide and melamine is insufficient to render the product substantially insoluble in aromatic hydrocarbon solvents and that its "4–C resins are rendered substantially insoluble in aromatic hydrocarbon solvents by using urea in addition to melamine, the urea being an essential ingredient without which the condensation product will agglomerate." Radiant's Pre-Trial Brief, p. 4.

The Court has already found that the amount of melamine by itself in the accused 4–C resin is sufficient to render it substantially insoluble in aromatic hydrocarbon solvents.

Tending to further confirm this finding is the fact that the record before us indicates that, not only is the amount of melamine sufficient to render the condensation product substantially insoluble in aromatic hydrocarbon solvents, but also that the additional urea, itself, has little or no effect in producing such substantial insolubility.

The Court recognizes that the question whether the urea produces or tends to produce the substantial insolubility of the accused 4–C resin in the aromatic hydrocarbon solvents is *not* the determinative issue referred to this Court by the Court of Appeals.

Radiant, therefore, is under no obligation to demonstrate that it is the urea which produces the substantial insolubility of its 4–C resin in the aromatic hydrocarbon solvents. Rather, the burden of proof is upon Switzer to prove that, whatever the effect of the urea may be, the amount of melamine, alone, in the accused 4–C resin is sufficient to render it substantially insoluble in the aromatic hydrocarbon solvents.

Nevertheless, evidence tending to show that the urea has no effect, so far as the 4–C resins are rendered substantially insoluble in aromatic hydrocarbon solvents is concerned, tends to confirm the Court's finding that it is the melamine, alone, which renders the accused 4–C resin substantially insoluble in the aromatic hydrocarbon solvents.

In this connection, the record shows that, although Radiant introduced in evidence the containers of benzene, toluene and xylene with the JS–738 resin (without urea), it did not introduce in evidence the containers of benzene, toluene and xylene which had the JS–739 resin (with urea) deposited in them on September 3, 1965, at the inter-partes test at Richmond, California.

It then became necessary for Switzer to introduce in evidence the container of benzene with the JS–739 resin (with urea). The Court examined this container of benzene with the JS–739 resin (with urea) and it appeared that this JS–739 resin (with urea) was in the same agglomerated condition as the JS–738 resin (without urea) and Bennehmias so admitted (RT 472).

If, as contended by Radiant, that its "4–C resins are rendered substantially insoluble in aromatic hydrocarbon solvents by using urea in addition to melamine", then it would seem that the agglomeration of the JS–739 resin (with urea) in benzene after approximately seven weeks demonstrates that the addition of urea had no apparent effect on the 4–C resin.

Our conclusion is that (1) either Radiant's contention that its "4–C resins are rendered substantially insoluble in aromatic hydrocarbon solvents by using urea in addition to melamine" is wrong or (2) the benzene tests which showed that after seven weeks the JS–738 resin (without urea) and the JS–739 resin (with urea) had agglomerated do not disprove that either resin is substantially insoluble in aromatic hydrocarbon solvents.

The Court has already found that the benzene test conducted by Radiant, showing its JS–738 resin to have agglomerated in benzene after approximately seven weeks, does not disprove that the accused resin contains sufficient melamine to render it substantially insoluble in aromatic hydrocarbon solvents.

After a review of the entire record, as discussed in this opinion, the Court finds, in answer to the question presented here, that in the 4–C resin, the amount of melamine utilized is such as to bring the resin within the limits of the claims of the Kazenas patent as those claims are delineated in Locklin v. Switzer Bros., Inc., 299 F.2d 160 (9th Cir. 1961).

This Memorandum of Decision contains the Findings of Fact and Conclusions of Law as required by Fed.R.Civ.P. 52.